[Cite as *State v. Moore*, 2024-Ohio-5839.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

STATE OF OHIO                    :
                                 :
        Appellee                 :    C.A. No. 2024-CA-12
                                 :
v.                               :    Trial Court Case No. 23-CR-530
                                 :
TYRON MARKUS JERMAINE MOORE      :    (Criminal Appeal from Common Pleas
                                 :    Court)
        Appellant                :
                                 :

. . . . . . . . . . .

O P I N I O N

Rendered on December 13, 2024

. . . . . . . . . . .

TIMOTHY B. HACKETT, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Tyron Markus Jermaine Moore, appeals from his

conviction and sentence on two counts of aggravated robbery.   According to Moore, the

trial court erred in failing to consider his youth before sentencing him as required by R.C.

2929.19(B)(1)(b). For the reasons discussed below, we find the sentence is not subject to review under R.C. 2953.08(D)(1) because the parties jointly recommended the sentence. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 2} At the time of the offenses involved herein, Moore was 16 years old. After holding a hearing, the juvenile court found probable cause that Moore had committed several crimes and granted the State's motion to relinquish jurisdiction. Consequently, on August 7, 2023, the juvenile court transferred jurisdiction to the Clark County Common Pleas Court general division.

{¶ 3} As pertinent here, an indictment was filed in common pleas court on August 15, 2023, charging Moore with having committed the following crimes: Count One: aggravated robbery on or about May 22, 2023, a first-degree felony; Count Two, aggravated robbery on or about May 22, 2023, a first-degree felony; Count Three, aggravated robbery on or about April 4, 2023, a first-degree felony; Count Four, having weapons under disability on or about April 4, 2023, a third-degree felony; Count Five, carrying a concealed weapon on or about April 4, 2023, a fourth-degree felony; Count Six, improper handling of firearms in a motor vehicle on or about May 22, 2023, a fourth-degree felony; Count Seven, having weapons under disability on or about May 22, 2023, a third-degree felony; and Count Eight, receiving stolen property on or about May 22, 2023, a fourth-degree felony.

{¶ 4} According to the transcript of the bindover proceedings (which are part of the

record), one incident occurred on April 4, 2023, and at least two separate incidents occurred on May 22, 2023. On April 4, 2023, Moore held up a Dollar General store at gunpoint and obtained money from the cash register. On May 22, 2023, Moore's friend stole his sister's Honda Odyssey van and went joyriding for several hours. During that time, the friend picked up Moore and two others. Moore and another person in the car then accosted a woman who was sitting in a car outside her residence. Moore told the woman to get out of the car or he would shoot her. He had a gun while making this threat. This attempt was unsuccessful because Moore and his accomplice were startled by a dog; as a result, they ran away. The other incident occurred the same day when another woman got in her car to go to work. As she was sitting in the car, Moore came up to the car window, pointed a gun at her, forced her out, and stole the car. The car was later found abandoned. Later that day, Moore and the three other occupants of the stolen van were involved in a police pursuit and were apprehended. *See* Transcript of Probable Cause Hearing (July 31, 2023), 3-5, 8-9, 14-15, 24, 51-53, 56, 65-66, 76, 79, 81, 83-85, 89, 90-92, 94-95, 100, 103-105, 109, and 121-122.

{¶ 5} As indicated, after the case was transferred to adult court, Moore was indicted for multiple offenses. On December 12, 2023, Moore pled guilty to Counts One and Two (which involved only the May 22, 2023 incidents). The negotiated plea included a guilty plea to these two counts, a presentence investigation (PSI), and a jointly-recommended sentence of a maximum of no more than ten years in prison. The State also agreed to dismiss the remaining counts. At the time, Moore was 16 years old. Transcript of Proceedings (Plea) (Dec. 12, 2023), 4-5.

{¶ 6} During the plea hearing, the judge specifically informed Moore about the fact that, regardless of the sentence to be imposed, Moore would be subject under the Reagan Tokes law to a minimum and maximum sentence. In specific reference to the jointly-recommended sentence, the court informed Moore that the possible sentence would be a minimum of ten years and a maximum of fifteen years. The court also thoroughly discussed how the Ohio Department of Rehabilitation and Correction would treat imposing a sentence longer than the minimum, which was the presumed amount of time within which Moore would be released. *Id.* at 7-14, and 17. After the court discussed the remaining required items under Crim.R. 11(C), Moore pled guilty to the charges and signed the plea form. The court then accepted Moore's plea, found him guilty, ordered a PSI, and set sentencing for January 5, 2024. *Id.* at 24-28. The written plea and judgment entry finding Moore guilty was filed on December 13, 2023,

{¶ 7} At sentencing, the court imposed a minimum of 10 years and a maximum of 15 years for each crime, to be served concurrently. The court also credited Moore with 227 days of jail credit as of the sentencing, along with additional jail credit pending delivery to the institution. Transcript of Proceedings (Disposition), 12-14. A judgment of conviction and sentence was then filed on January 10, 2024. Moore timely appealed from the judgment.

## II. Discussion

{¶ 8} Moore's sole assignment of error states that:

Tyron Moore's Adult Prison Sentence Is Unauthorized by and

Contrary to Law Because the Trial Court Failed to Comply With the Mandatory Sentencing Provisions of R.C. 2929.19(B)(1)(b), Which Now Require Trial Courts to Consider a Child's Youth and All of Its Attendant Characteristics Before Sentencing [Him] to Adult Prison.

## A. Background of This Appeal

{¶ 9} Under this assignment of error, Moore contends the trial court erred in sentencing him because it failed to discuss, recite, or otherwise comply with the mandatory requirements in R.C. 2919.19(B)(1)(b). In response, the State filed a brief conceding error. *See* Answer Brief of Appellee State of Ohio (Conceded Error) (Aug. 21, 2024).

{¶ 10} After reviewing the matter, we asked the parties to provide supplemental briefing. In this vein, we said:

> The alleged error raised on appeal is that the trial court failed to comply with R.C. 2929.19(B)(1)(b), which requires trial courts to consider additional mitigating factors during sentencing if an offender was under 18 years of age when the crime was committed. In reviewing the file, a question arose regarding whether this matter is subject to review based on R.C. 2953.08(D)(1), which limits review under R.C. 2953.08 "if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." Consequently, the parties are ordered to submit supplemental briefs on this

point. In this regard, the court directs the parties to the following cases: *State v. Holman*, 2023-Ohio-716 (8th Dist.); *State v. Bennett*, 2023-Ohio-4412 (8th Dist.); and *State v. Shepherd*, 2024-Ohio-4618 (9th Dist.). The parties are free to include any other relevant authority.

Order (Oct. 16, 2024), p. 2-3. We further stated that if Moore contended the matter was subject to review, the parties were to address the issue of plain error because Moore failed to object in the trial court. *Id.* at p. 3.

{¶ 11} Both parties then submitted supplemental briefs. Moore argued first that this case does not involve an agreed-upon sentence. Moore's Supplemental Brief (Oct. 24, 2024), p. 1-2. Moore then distinguished the cases we had asked him to address, stating: (1) both *Bennett* and *Holman* involved agreed-upon sentence ranges, but the record in those cases adequately reflected the trial court had considered the statutory factors; and (2) *Shepherd* involved an agreed sentence, but it was an automatic mandatory minimum sentence, and the court lacked discretion to impose anything less. *Id.* at 2-3. Moore also noted that he had raised plain error in his initial brief and then further discussed that point. *Id.* at 3-4.

{¶ 12} In response, the State commented that in *Holman*, the Eighth District Court of Appeals had cited two cases from our district which set a precedent that jointly-recommended sentences are not subject to appellate review, even where the trial court failed to discuss factors for imposing consecutive sentences under R.C. 2929.14(C). State's Supplemental Answer Brief (Nov. 7, 2024), p. 2-3, discussing *State v. Essinger*, 2016-Ohio-4977 (2d Dist.), and *State v. Connors*, 2016-Ohio-3195 (2d Dist.). The State

argued that the principle in those cases also applies here. The State did not, however, address plain error as we had asked.

{¶ 13} As a preliminary point, we disagree with Moore's claim that the parties did not jointly recommend a sentence. In *Connors*, we stressed that we had "repeatedly . . . held that a sentence within an agreed-upon range is a jointly-recommended sentence under R.C. 2953.08(D)(1)." *Id.* at ¶ 4, citing *State v. Collini*, 2015-Ohio-4784, ¶ 10 (2d Dist.). Therefore, the sentence here, which contains such a range, is governed by that part of the statute.

{¶ 14} The error alleged on appeal is that the trial court failed to comply with R.C. 2929.19(B)(1)(b), which requires courts to consider additional mitigating factors when an offender was under 18 years of age when the crime was committed. These statutory factors include, but are not limited to: an offender's chronological age at the time of the offense and that age's hallmark features; an offender's family and home environment, trauma history, inability to control his or her surroundings, and school and special education history; various features of the offense's circumstances like the degree of the offender's participation in the crime and the impact of family and peer pressures; whether the offender may have been charged and convicted of lesser offenses but for various incompentencies that are associated with youth; and examples of the offender's rehabilitation during confinement. R.C. 2929.19(B)(1)(b)(i)-(v).

{¶ 15} This part of R.C. 2929.19 was effective in 2021, and our district first considered it in *State v. Bryant*, 2024-Ohio-1192 (2d Dist.), which was decided on March 29, 2024. In *Bryant*, we followed the approach of the Fifth, Third, and Eighth Districts,

which limits our review "to whether the record affirmatively demonstrates that the court failed to consider the R.C. 2929.19(B)(1)(b) factors." *Id.* at ¶ 37. The record in *Bryant* included the defendant's PSI report, social and family history, a police report, the court's discussion of all of the defendant's juvenile offenses, including multiple domestic violence charges, and a forensic evaluation that went into detail about the defendant's "mental and emotional health, how his maturity level compared to his peers, his history, and [the doctor's] opinion about [defendant's] amenability." *Id.* at ¶ 38-39. In view of these facts, we affirmed the judgment, stating "we cannot say that the record affirmatively demonstrates that the court failed to consider the R.C. 2929.19(B)(1)(b) factors." *Id.* at ¶ 40.

{¶ 16} With this background in mind, we consider whether appeal is permissible here.

## B. Ability to Appeal

{¶ 17} As noted, we asked the parties to address various cases. After receiving the supplemental briefs, we have again reviewed all the relevant authority, which is still limited to the cases we mentioned to the parties.

### i. *State v. Shepherd*

{¶ 18} In *Shepherd*, 2024-Ohio-4618, the defendant was 16 years old at the time of the offense and was charged with 17 counts, including two counts of murder and various specifications. He then pled guilty to murder, one firearm specification, and a

criminal gang specification. The parties jointly recommended a sentence of 23 years to life, and the trial court imposed the recommended sentence. *Id.* at ¶ 3-4. The sentence imposed was the mandatory minimum sentence allowed for the crimes and specifications. *Id.* at ¶ 4. In a single assignment of error, the defendant claimed, as here, that the trial court had erred in failing to consider his youth as required by R.C. 2929.19(B)(1)(b). *Id.* at ¶ 7. In opposition, the State argued, among other things, that "the sentence was jointly recommended and not reviewable pursuant to R.C. 2953.08(D)(1)." *Id.*

{¶ 19} In addressing this point, the court of appeals remarked that " '[g]enerally speaking, a defendant cannot challenge a jointly-recommended sentence on appeal.' " *Id.* at ¶ 8, quoting *State v. Zazzara*, 2019-Ohio-662, ¶ 10 (9th Dist.). The court also quoted from a discussion of R.C. 2953.08(D) that was contained in a 2022 Ohio Supreme Court decision. *See Shepherd* at ¶ 8, quoting *State v. Grevious*, 2022-Ohio-4361, ¶ 32.

{¶ 20} In *Grevious*, the Supreme Court of Ohio discussed R.C. 2953.08 at length. The court noted that due to prior lack of meaningful appellate review over sentencing decisions, the General Assembly, in enacting R.C. 2953.08, had "instructed the Ohio Sentencing Commission to develop a sentencing plan that 'considered judicial discretion, uniformity and fairness.' " *Grevious* at ¶ 29, quoting Lewis R. Katz, Ohio Sentencing Commission, *Testimony before the Ohio Senate Judiciary Committee* (Feb. 15, 1995). The court further stated that "[t]he passage of R.C. 2953.08 was intended to combine these principles by retaining a trial court's discretion in sentencing while providing appellate review of the trial court's exercise of such discretion for uniformity and fairness." *Id.* However, while R.C. 2953.08 was intended to encompass these principles, it did not

contemplate appeals in all cases; instead, "it delineated grounds for appeal as a matter of right when 'the sentence imposed in a particular case is contrary to critical presumptions and policies within the statute.' " *Id.*

{¶ 21} Following these remarks, the Supreme Court of Ohio outlined grounds for appeal set forth in R.C. 2953.08(A) through (C), which reflected "this intent to provide appellate review – not in all cases but in situations in which the trial court has exercised its broad *discretion* in imposing certain sentences." (Emphasis in original.) *Id.* at ¶ 30. The court noted that, in contrast, however:

> R.C. 2953.08(D)(1), which is one of the other limitations on the right to appeal a felony sentence under R.C. 2953.08, involves a situation in which the trial court does not exercise its discretion in imposing a sentence. R.C. 2953.08(D)(1) precludes appellate review under R.C. 2953.08 when the sentence is authorized by law, has been recommended jointly by the parties, and is imposed by the sentencing judge. In that situation, appellate review under R.C. 2953.08 is unnecessary because the parties have agreed that the sentence is appropriate and the trial court accordingly has elected not to exercise its broad discretion in determining the sentence.

*Id.* at ¶ 32, citing *State v. Porterfield*, 2005-Ohio-3095, ¶ 25.

{¶ 22} Relying on *Grevious* (and its included citation of *Porterfield*)*,* the Ninth District Court of Appeals found in *Shepherd* that because "the sentence imposed is the minimum sentence available under Ohio law for the crimes and specifications to which Mr. Shepherd pleaded guilty," the trial court "did not exercise discretion and, thus, did not

need to independently justify imposing the jointly recommended sentence." *Shepherd*, 2024-Ohio-4618, at ¶ 9-10.

{¶ 23} One difference here is that the parties jointly recommended a sentence of no more than ten years. In this regard, Moore argues that the court did have discretion to impose a much lesser sentence like the minimum three years for the first-degree felony, and review, therefore, might be possible. However, in two cases decided by the Eighth District Court of Appeals, the jointly-recommended sentence involved a range, as in the case before us. Furthermore, as *Grevious* makes clear, review is unnecessary when the parties have agreed that a particular sentence is appropriate. This brings us to the other cases we cited to the parties.

### ii. *State v. Bennett* and *State v. Holman*

{¶ 24} In *Bennett*, 2023-Ohio-4412, the Eighth District Court of Appeals considered a defendant's appeal where he had pled guilty and an agreement existed as to a sentencing range. Again, the trial court's failure to consider the R.C. 2929.19(B)(1)(b) factors was an issue. However, the defendant phrased the argument as whether trial counsel had been ineffective in failing to ask the court to address the factors. *Id.* at ¶ 11.

{¶ 25} The majority opinion did not discuss whether the issue was reviewable. Instead, the majority concluded that R.C. 2929.19(B)(1)(b) does not impose an obligation on counsel to argue mitigating factors at sentencing. The majority also found the trial court was not required to discuss the factors and that "[a]bsent any evidence to the

contrary, the record adequately demonstrates that the trial court considered the R.C. 2929.11(B)(1)(b) factors before sentencing" the defendant. *Id.* at ¶ 13.[1] Finally, the court found that even if counsel's failure was objectively unreasonable, there was no prejudice because under the plea agreement, the defendant "agreed that the court could impose a sentence of 18 to 22 years' incarceration, and the court imposed an indefinite sentence of 20 to 22.5 years' incarceration, within the range of the agreed sentence." *Id.* at ¶ 14.

{¶ 26} In a concurring opinion, Judge Gallagher pointed out that R.C. 2953.08(D)(1) statutorily limits appellate jurisdiction to hear appeals. *Id.* at ¶ 25 (Gallagher, J., concurring). Thus, the defendant's sentence would normally be unreviewable because "[a] 'sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge.' " *Id.*, quoting R.C. 2953.08(D)(1). The judge stressed that this is true even where the defendant " 'agreed to a sentencing range or sentencing cap, as opposed to a specific sentence.' " *Id.*, quoting *State v. Grant*, 2018-Ohio-1759, ¶ 23 (8th Dist.).

{¶ 27} Relying on *Porterfield,* as the Ninth District did in *Shepherd*, Judge Gallagher remarked that:

When "a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence."

*State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690,

---

[1] The reference to R.C. 2929.11(B)(1)(b) is a typographical error, as the court of appeals clearly was considering R.C. 2929.19(B)(1)(b).

¶ 25-26.  No sentence within the recommended sentencing range need be justified, and at one time, the sentence was considered unreviewable under R.C. 2953.08(D)(1).

*Bennett*, 2023-Ohio-4412, at ¶ 26.

**{¶ 28}** However, Judge Gallagher then went on to say that "R.C. 2953.08 no longer exclusively controls appellate sentencing review."   *Id*.   His opinion was based on *State v. Patrick*, 2020-Ohio-6803.   In this regard, the judge noted that:

[In *Patrick*], a majority of the Ohio Supreme Court concluded that "R.C. 2953.08(D)(3) does not preclude an appeal of a sentence for aggravated murder or murder that is based on constitutional grounds." Subdivision (D)(3), like (D)(1), renders certain sentences unreviewable. The difference between subdivision (D)(3), which provides that a sentence for aggravated murder or murder is not reviewable, and subdivision (D)(1), which provides that a jointly recommended sentence that is imposed by the trial court is not reviewable, is that under the latter provision, the defendant arguably waives any and all constitutional challenges against the sentence by agreeing to recommend the sentence to the trial court.  But *Patrick* presents a broader implication for R.C. 2953.08(D) in general.

According to *Patrick*, "R.C. 2953.08(A)(4) does not describe an appeal taken on constitutional grounds and that [constitutional-right based] appeal is not an appeal 'under this section[.]' "   *Id*. at ¶ 22.   R.C. 2953.08(D), is therefore, not a jurisdictional bar against an appellate

challenge to the constitutional validity of a sentence. R.C. 2953.08(A) only controls a defendant's ability to challenge his sentence as being contrary to law, and claims that a sentence is "contrary to law" do not include constitutional challenges. *Id.* Although *Patrick* involved subdivision (D)(3) of R.C. 2953.08, all of division (D) is impacted since no constitutional challenge to a sentence falls under R.C. 2953.08(A). As a direct result, a constitutional challenge to a sentence can be maintained despite the relevant prohibition against appellate review in R.C. 2953.08(D).

*Bennett*, 2023-Ohio-4412, at ¶ 27-28 (Gallagher, J., concurring).

**{¶ 29}** Judge Gallagher therefore concluded that, because the defendant had raised a constitutional claim, i.e., ineffective assistance of counsel, his sentence was reviewable. *Id.* at ¶ 32. Notably, the judge also referred to another recent case from the Eighth District which had involved a jointly-agreed-upon range of sentences. *Id.* at ¶ 29, discussing *Holman*, 2023-Ohio-716.

**{¶ 30}** *Holman* involved a guilty plea to involuntary manslaughter and a firearm specification and a jointly-recommended sentencing range of 15 to 20 years, which was within the statutory range. *Holman* at ¶ 5 and 10. Again, the defendant in *Holman* argued that the trial court had erred in failing to consider the factors in R.C. 2929.19(B)(1)(b).

**{¶ 31}** *Holman* was before a different panel of the Eighth District. This panel stated that: "while Holman argues that he should be resentenced because the trial court allegedly failed to properly consider his youth, this argument does not allege that his

sentence is somehow not 'authorized by law' pursuant to R.C. 2953.08(D)(1). Because Holman's sentence was within the recommended sentencing range and was authorized by law, it is not reviewable on appeal pursuant to R.C. 2953.08(D)(1)." *Id.* at ¶ 10. The panel did go on to briefly note that the record reflected that the trial court had considered the appropriate factors, which would have been unnecessary since the sentence was authorized by law. *Id.*

{¶ 32} The case before us does not involve a constitutional claim (and therefore is like *Holman* and not like *Bennett*). Judge Gallagher did criticize *Patrick* for requiring appellate courts to engage in "linguistic parsing" in order to consider cases that are otherwise unreviewable. *Bennett*, 2023-Ohio-4412, at ¶ 31 (Gallagher, J., concurring).

{¶ 33} In *Patrick*, the Supreme Court of Ohio stated that:

It is clear from the language in R.C. 2953.08 that the statute does not establish the only avenue by which a party may appeal a sentence. R.C. 2953.08(A) begins by stating, "*In addition to any other right to appeal * * *,* a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds * * *." (Emphasis added.) The language "[i]n addition to any other right to appeal" appears again in R.C. 2953.08(B) regarding appeals by the prosecution. Also, R.C. 2953.08(E) states: "A sentence *appeal under this section* shall be consolidated *with any other appeal* in the case. If no other appeal is filed, the court of appeals may review only the portions of the trial record that pertain to sentencing." (Emphasis added.)

These provisions referring to other methods of appeal make clear that R.C. 2953.08 does not prescribe the sole right to appeal a criminal sentence.

Indeed, R.C. 2953.02 also provides a right to appeal a judgment or final order to the court of appeals "[i]n a capital case in which a sentence of death is imposed for an offense committed before January 1, 1995, *and in any other criminal case.*" (Emphasis added.) R.C. 2953.02 also provides, "A judgment or final order of the court of appeals involving a question arising under the Constitution of the United States or of this state may be appealed to the supreme court as a matter of right." The final judgment for purposes of appeal under R.C. 2953.02 is the sentence. . . . Thus, R.C. 2953.02 also provides a statutory right to appeal a criminal sentence.

*Patrick*, 2020-Ohio-6803, at ¶ 15-16.

**{¶ 34}** The part of R.C. 2953.08 that was involved in *Patrick* was section (D)(3), which, again, limits review under the statute for sentences imposed for aggravated murder or murder. However, subsection (D)(1) contains similar language, limiting review under R.C. 2953.08 "if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." The Supreme Court of Ohio found in *Patrick* that none of the bases for appeal under R.C. 2953.08, including claims that a sentence is "contrary to law" under R.C. 2953.08(A)(4), describe constitutional claims. As a result, the court held that constitutional claims as to the sentence in aggravated murder or murder cases (which the court was considering in that case) were allowed. *Id.* at ¶ 19-22.

{¶ 35} Because the defendant in *Patrick* raised a constitutional challenge, the court went on to consider the issue before it, which involved whether "a trial court must separately consider the youth of a juvenile offender as a mitigating factor before imposing a life sentence under R.C. 2929.03, even if that sentence includes eligibility for parole." *Id.* at ¶ 2. The court found that trial courts must consider this factor before imposing such a sentence.

{¶ 36} Neither R.C. 2953.08 nor R.C. 2953.02 has been amended since *Patrick* was decided in 2020. Again, based on *Patrick*, as Judge Gallagher observed, the effect is that if a defendant agrees to a jointly-recommended sentence, the court of appeals can review the sentence only if the defendant raises a constitutional claim. That did not occur in the case before us.

## C. Further Considerations

{¶ 37} In *Shepherd*, 2024-Ohio-4618, the Ninth District also made the following statements after discussing *Grevious*, 2022-Ohio-4361:

Similar to *Grevious*, the trial court here did not exercise discretion and, thus, did not need to independently justify imposing the jointly recommended sentence. Indeed, even where the parties have jointly recommended a sentence and, in imposing that sentence the trial court orders nonmandatory consecutive sentences, the Supreme Court of Ohio has held the statutorily required findings to support the imposition of nonmandatory consecutive sentences were not necessary and the

nonmandatory consecutive sentences were "authorized by law," and thus nonreviewable under R.C. 2953.08(D)(1). *See State v. Sergent*, 2016-Ohio-2696, ¶ 43-44. *See also State v. Nutter*, 2024-Ohio-2434, ¶ 8 (9th Dist.).

It follows then that, here, the trial court's imposition of the jointly recommended sentence by Mr. Shepherd and the State, which includes a *mandatory* term of imprisonment of 15 years to life for murder and *mandatory* terms of 3 years and 5 years on 2 specifications that are required by statute to be served prior to and consecutive to the sentence for murder, which constitutes the mandatory minimum sentence under Ohio law for Mr. Shepherd's offenses, is likewise authorized by law and unreviewable under R.C. 2953.08(D)(1).

(Emphasis in original.) *Shepherd*, 2024-Ohio-4618, at ¶ 10-11.

**{¶ 38}** To the extent the Ninth District relied on the mandatory minimum nature of the sentence imposed, that is different from the situation here, where the sentence was simply within the range of sentences permitted for the crimes. However, the Ninth District relied on cases involving findings relating to non-mandatory sentences. As a result, the issue arises whether R.C. 2929.19(B)(1)(b) might be considered "mandatory" (and possibly reviewable) or would be "non-mandatory" (and thus "authorized by law" as that term has been defined).

(i) "Authorized by Law"

{¶ **39**} In *Sergent*, the defendant pled guilty to three counts of rape, and the trial court imposed the jointly-recommended sentence of three eight-year prison terms to be served consecutively to each other for an total term of 24 years. *Sergent,* 2016-Ohio-2696, at ¶ 6. The trial court did not discuss consecutive sentences during the sentencing hearing but included the statutory findings in its entry. *Id.* at ¶ 6-9. Consequently, the issue on appeal was whether the agreed sentence was "authorized by law" and relieved the trial court from making the findings at the sentencing hearing as required by *State v. Bonnell,* 2014-Ohio-3177. *Id.* at ¶ 10-13.

{¶ **40**} In addressing the issue, the Supreme Court of Ohio noted its prior decision in *Porterfield,* which had held that "a joint recommendation to impose consecutive sentences eliminates the need for a trial judge to make the consecutive-sentence findings set out in R.C. 2929.14(C)(4) and that such a sentence, once imposed, is not subject to review under R.C. 2953.08(D) (now (D)(1))." *Id.* at ¶ 22, referencing *Porterfield*, 2005-Ohio-3095. However, the court also noted that *Porterfield* had not considered the meaning of "authorized by law." *Id.* The court then stressed it had addressed the term's meaning in a later case. *Id.* at ¶ 27, citing *State v. Underwood*, 2010-Ohio-1. In *Underwood,* the court had held that " '[a] sentence is 'authorized by law' and is not appealable within the meaning of R.C. 2953.08(D)(1) only if it comports with all *mandatory* sentencing provisions.' " (Emphasis in original.) *Id.*, quoting *Underwood*, at paragraph two of the syllabus.

{¶ **41**} In *Sergent*, the court further noted that *Underwood* involved allied offenses and the court there had found that merging allied offenses is a mandatory sentencing

requirement. As a result, the defendant in *Underwood* could appeal the failure to merge. *Id.*, citing *Underwood* at ¶ 26, 30, and 33. *Underwood* had also distinguished *Porterfield* (which involved consecutive sentences), because imposing consecutive sentences is discretionary, whereas merging allied offenses is not. *Id.* at ¶ 26, discussing *Underwood* at ¶ 27. Therefore, based on *Underwood's* prior interpretation of "authorized by law," the court found in *Sergent* that "[If a jointly recommended sentence includes nonmandatory consecutive sentences and the trial judge fails to make the consecutive-sentence findings set out in R.C. 2929.14(E)(4), the sentence is nevertheless 'authorized by law,' and therefore is not appealable pursuant to R.C. 2953.08(D)(1)." *Id.* at ¶ 30.

{¶ 42} In *Sergent*, the Supreme Court of Ohio also rejected the defendant's claim that *Porterfield* was outdated due to changes in Ohio's sentencing statutes. The court stressed that the relevant part of R.C. 2929.14(E) (formerly R.C. 2929.14(C) and renumbered as R.C. 2929.14(E)) had not changed since *Porterfield* was decided. *Sergent,* 2016-Ohio-2696, at ¶ 32-37. The court also distinguished *Bonnell*, because in that case, there was a plea agreement, but no jointly recommended sentence. In contrast, in *Porterfield*, the state and defense had proposed consecutive sentences, not the judge. *Id.* at ¶ 42. Because *Sergent* involved a jointly-recommended sentence that included consecutive sentences, the court found *Porterfield* controlling and held that the trial court was not required to make findings on consecutive sentences during the hearing. *Id.* at 42-44. Thus, "when a trial judge imposes such an agreed sentence without making those findings, the sentence is nevertheless 'authorized by law' and not reviewable on appeal pursuant to R.C. 2953.08(D)(1)." *Id.* at ¶ 43.

**{¶ 43}** One might argue that R.C. 2929.19(B)(1)(b) is a "mandatory" sentencing provision.  However, other than the three cases mentioned above (*Shepherd*, *Bennett*, and *Holman*), we have not found any cases that cite *Porterfield*, *Sergent*, or *Underwood* and also include R.C. 2929.19(B)(1)(b).  As an additional matter, there is a distinction between findings about allied offenses and the findings in R.C. 2929.19(B)(1)(b), which are much more like the findings to be made before imposing consecutive sentences.

**{¶ 44}** R.C. 2941.25(A), the allied offenses statute, "*incorporates the constitutional protections against double jeopardy*. These protections generally forbid successive prosecutions and multiple punishments for the same offense."  (Emphasis added.) *State v. Whitfield*, 2010-Ohio-2, ¶ 7.  *Accord In re A.G.*, 2016-Ohio-3306, ¶ 11.  In contrast, there is " ' "no constitutional right to concurrent sentences for two separate crimes involving separate acts." ' "  *State v. Hairston*, 2008-Ohio-2338, ¶ 18, quoting *State v. Berger*, 212 Ariz. 473, ¶ 27.  (Other citation omitted.)  Similarly, R.C. 2929.19(B(1)(b) does not implicate constitutional rights; the right is one created by statute.  Specifically, while constitutional rights come into play in certain juvenile cases, like where a life sentence is imposed on a juvenile, the constitutional requirements do not extend beyond those types of situations.  Certainly, the legislature may also allow consideration of youth in other instances, but this is by statute, not constitutionally mandated.

**{¶ 45}** "The Eighth Amendment to the United States Constitution states, 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' "  *State v. Long*, 2014-Ohio-849, ¶ 8.  " 'Central to the

Constitution's prohibition against cruel and unusual punishment is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." ' " *Id.*, quoting *In re C.P.*, 2012-Ohio-1446, ¶ 25. (Other citation omitted.) In *Long*, the court mentioned distinct situations in which the United States Supreme Court had applied the Eighth Amendment prohibition to juvenile sentences: "imposition of the death penalty and the imposition of life without the possibility of parole for nonhomicide offenses"; and "mandatory life-without-parole sentences on juveniles." *Id.*, citing *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012).

{¶ 46} Consistent with this authority, the Supreme Court of Ohio held in *Long* that "[a] court, in exercising its discretion under R.C. 2929.03(A), must separately consider the youth of a juvenile offender as a mitigating factor before imposing a sentence of life without parole." *Id.* at paragraph one of the syllabus, following *Miller*. The offense involved in R.C. 2929.03(A) at that time was aggravated murder. *Id.* at ¶ 1.

{¶ 47} In *Long*, the defendant urged the court to follow factors the Wyoming Supreme Court had used and to require their consideration "when sentencing a juvenile offender to life without the possibility of parole." However, the court declined to do so. *Id.* at ¶ 15-16, discussing *Bear Cloud v. State*, 2013 WY 18, ¶ 42. The factors in question were very similar to the language used several years later when subsection (b) was added to R.C. 2929.19(B)(1). *Compare* Sub.S.B. 256, 2020 Ohio Laws File, eff. Apr. 12, 2021. While the Supreme Court of Ohio court found these factors might be helpful, it stressed that Ohio's sentencing statutes did not require such findings, and courts had discretion to

use their own reasoning in choosing sentences within a statutory range. *Long* at ¶ 15-16.

{¶ 48} Specifically, when *Long* was decided in 2014, Ohio's general sentencing statutes, R.C. 2929.11 and R.C. 2929.12, contained various factors relating to: an offender's nature and rehabilitation; whether a crime is more or less serious; whether an offender is more or less likely to commit future crimes; and whether mitigating factors exist. *Long*, 2014-Ohio-849, at ¶ 17-18. Since these statutes allowed youth to be considered as a mitigating factor, the Supreme Court of Ohio found that "[a]s applied to a juvenile found guilty of aggravated murder under R.C. 2929.03(A), then, Ohio's sentencing scheme does not fall afoul of *Miller,* because the sentence of life without parole is discretionary." *Id.* at ¶ 19. The court then vacated the defendant's sentence of life in prison without parole and remanded the case for resentencing, stating that "the trial court must consider [the defendant's] youth as mitigating before determining whether aggravating factors outweigh it." *Id.* at ¶ 28-29.

{¶ 49} Subsequently, in *Patrick*, the court held that "a sentence of life in prison with parole eligibility after 33 years imposed on a juvenile offender triggers the same scope of Eighth Amendment concern and sentencing consideration that [the court] recognized in *Long.*" *Patrick*, 2020-Ohio-6803, at ¶ 29. Again, *Patrick* involved a constitutional claim, not one based on a statute.

{¶ 50} As noted, the legislature later passed Sub.S.B. 256, which codified the factors discussed in *Long.* This bill was passed in December 2020 and was effective in April 2021. As part of the same statute, the legislature amended R.C. 2929.02(A) to

preclude life sentences without parole in aggravated murder cases where the offender was under age 18 at the time of the offense. A new statute, R.C. 2967.132, was also enacted and deals with parole for persons under the age of 18 at the time of offenses, depending on whether the offense is for an aggravated homicide (as defined in the statute) or not. *See State ex rel. Jones v. Ohio [Adult] Parole Auth.*, 2024-Ohio-3251, ¶ 31 (10th Dist.). As an example, the statute "provides that certain juvenile homicide offenders are eligible for parole after serving 25 years in prison, regardless of the actual sentence imposed or when the offender was sentenced." *State v. White*, 2023-Ohio-4499, ¶ 4 (1st Dist.), citing R.C. 2967.132(C). In addition to requiring parole boards to hold hearings within a reasonable time, the new statute also has mitigating factors for boards to consider that mirror the factors in R.C. 2929.19(B)(1)(b)(i)-(v). *Compare* R.C. 2967.132(E)(2)(a)-(e).

{¶ 51} In light of these changes, the legislature has recently decided to adopt a more lenient approach in certain situations involving juveniles (such as their ability to gain earlier parole). However, this is on a statutory basis, not as a matter of constitutional right (other than the situations described in *Long*). Consequently, R.C. 2929.19(B)(1)(b) is not like the allied offenses statute, which incorporates constitutional protections. It is more like the consecutive sentence findings in R.C. 2929.14(C), which are not constitutionally mandated.

{¶ 52} As a final point, we note that R.C. 2953.08(A) states that: "In addition to any other right to appeal *and except as provided in division (D) of this section*, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the

sentence imposed upon the defendant on one of the following grounds." The only ground listed in R.C. 2953.08(A)(1)-(5) that even potentially might be available is that "[t]he "sentence is contrary to law." R.C. 2953.08(A)(4). However, subsection (D)(1) is an exception to that avenue to appeal. Moore has not suggested an alternative basis for appeal. As noted, no constitutional claim has been asserted here.

**{¶ 53}** Based on the preceding discussion, the jointly recommended sentence was authorized by law and is not subject to review based on R.C. 2953.08(D)(1). The Supreme Court of Ohio has held that "R.C. 2953.08(D)(1) is 'a statutory limit on a court of appeals' jurisdiction to hear an appeal.' " *State v. Gwynne*, 2019-Ohio-4761, ¶ 9, fn. 1, quoting *State v. Noling*, 2013-Ohio-1764, ¶ 22. And, as we remarked in *Connors*, "[a]s part of their plea deal, Connors and the State agreed to a prison sentence within the range of 19 to 25 years. If he believed a sentence at the top end of that range was improper, Connors should not have accepted a plea deal that authorized it. Because he did accept a plea deal that explicitly authorized his sentence, he cannot challenge the sentence on appeal." *Connors*, 2016-Ohio-3195, at ¶ 4. The same observations apply here.

**{¶ 54}** Accordingly, Moore's sole assignment of error is overruled.

### III.   Conclusion

**{¶ 55}** Moore's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.